U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

AUG 0 9 2011

CHRIS R. JOHNSON, Clerk
By
  Deputy Clerk

MANUEL POSADA REYES,                                    **PLAINTIFFS**
JOSE ANTONIO REYES, AND DENNIS REYES,
INDIVIDUALLY AND ON BEHALF OF
OTHERS SIMILARLY SITUATED

v.                              CASE NO. 11-5192

LABOR, INC.,                                            **DEFENDANTS**
BENTON COUNTY FOODS, LLC,
AND PATRICIA WILMOTH, individually
and in her capacity as owner of LABOR, INC.

### COMPLAINT

COME now the Plaintiffs, Manuel Posada Reyes, Jose Antonio Reyes, and Dennis Reyes,

by and through their attorneys, Holleman & Associates, P.A. and Swindle Law Firm, P.A., and for

their Complaint against Defendants, Labor, Inc., and Benton County Foods, (hereinafter collectively

referred to as "Defendants"), state and allege as follows:

### I.   INTRODUCTION

1.      Plaintiffs, current and former poultry workers employed by Defendants, bring this

action for declaratory and monetary relief for Defendants' willful failure to pay them minimum

wages as required by federal law.

2.      This action arises from Defendants' violations of plaintiffs' rights under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

3.      Upon information and belief, other current and former employees of Defendants

are also entitled to recover unpaid overtime compensation for the reasons alleged in this

complaint.  Pursuant to 29 U.S.C. § 216(b), the above-named plaintiffs are permitted to maintain

this action "for and in behalf of . . . themselves and other employees similarly situated." Any similarly situated employee wishing to become a party plaintiff to this action must give "his consent in writing to become such a party" and such consent must be filed with this Court. 29 U.S.C. § 216(b).

## II.   JURISDICTIONAL STATEMENT

4.     Plaintiff Manuel Posada Reyes resides in Benton County, Arkansas.  At all times relevant to this complaint, he was employed by Defendants as a poultry worker and was paid on a piece-rate basis resulting in a weekly income that did not meet the minimum wage requirements of the Fair Labor Standards Act.  He is filing this complaint on behalf of himself and on behalf of all other employees of Defendants, whether past, present or future, who are poultry workers, paid on a piece-rate basis, whose weekly income does not meet the minimum wage requirements of the Fair Labor Standards Act.

5.     Plaintiff Jose Antonio Reyes resides in Benton County, Arkansas.  At all times relevant to this complaint, he was employed by Defendants as a poultry worker and was paid on a piece-rate basis resulting in a weekly income that did not meet the minimum wage requirements of the Fair Labor Standards Act.  He is filing this complaint on behalf of himself and on behalf of all other employees of Defendants, whether past, present or future, who are  poultry workers, paid on a piece-rate basis, whose weekly income does not meet the minimum wage requirements of the Fair Labor Standards Act.

6.     Plaintiff Dennis Reyes resides in Benton County, Arkansas.  At all times relevant to this complaint, he was employed by Defendants as a poultry worker and was paid on a piece-rate basis resulting in a weekly income that did not meet the minimum wage requirements of the

Fair Labor Standards Act.  He is filing this complaint on behalf of himself and on behalf of all

other employees of Defendants, whether past, present or future, who are poultry workers, paid on

a piece-rate basis, whose weekly income does not meet the minimum wage requirements of the

Fair Labor Standards Act.

7.     Defendant Labor, Inc., is a domestic for profit corporation, and was the Plaintiffs'

employer for all relevant time periods.  For all of the similarly situated employee Plaintiffs,

Labor, Inc., is currently or was, together with Benton County Foods, LLC, their employer within

the meaning of the Fair Labor Standards Act, 29 U.S.C § 203(d).  The registered agent for Labor,

Inc., is Patricia Reaper, whose address is 9220 WPA Road, Gentry, Arkansas 72734.

8.     Defendant Benton County Foods, LLC (hereinafter "BCF"), is a domestic limited

liability corporation, and was, together with Labor, Inc., the Plaintiffs' employer for all relevant

time periods.  For all of the similarly situated employee Plaintiffs, BCF, is currently or was their

employer within the meaning of the Fair Labor Standards Act, 29 U.S.C § 203(d).  The registered

agent for BCF is The Corporation Company, whose address is 124 West Capitol, Suite 1900,

Little Rock, Arkansas 72201.

9.     Defendant Patricia Wilmoth is an individual residing in Gentry, Arkansas, and

was the owner/manager of Labor, Inc., for all relevant time periods. Ms. Wilmoth was the

plaintiffs employer for all relevant time periods. For all of the similarly situated employee

Plaintiffs, Ms. Wilmoth is currently or was their employer within the meaning of the FLSA, 29

U.S.C. § 203(d).  Ms. Wilmoth may be served at her place of business at 9220 WPA Road,

Gentry, Arkansas 72734.

10.    Plaintiffs and those similarly situated seek an action for declaratory judgment

under 28 U.S.C. §§ 2201 and 2202 and for compensation and other relief under the Fair Labor

3

Standards Act, as amended, 29 U.S.C. §§ 215, 216(b) and 217.

11.     Jurisdiction of this action is conferred on the Court by 29 U.S.C. §§ 216(b), 217; 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Venue lies within the district, pursuant to 28 U.S.C. § 1391.

12.     At all times material herein, the Plaintiffs and those similarly situated have been entitled to the rights, protection and benefits provided under the Fair Labor Standards Act, as amended, 29 U.S.C. § 201, et seq.

### III.    <u>FACTUAL ALLEGATIONS</u>

13.     Labor, Inc., is a staffing agency that provides laborers to BCF through the use of purported independent contractors. In reality, Labor, Inc., and BCF are the joint employers of Plaintiffs and other similarly situated employees.

14.     BCF is an egg producer located in Benton County, Arkansas. Upon information and belief, BCF is a wholly owned subsidiary of Cal-Maine Foods, Inc. (hereinafter "Cal-Maine"). Cal-Maine sells eggs throughout the United States.

15.     BCF oversees the production and processing of its eggs through a system of production called vertical integration. Vertical integration allows BCF to control every aspect of production, processing and distribution of its eggs, from the hatching of the chicks that will become its laying hens, to the placement of those chicks in houses to grow, to the retrieval and transport of its chickens to a laying factory, to the retrieval and processing of the eggs layed by the hens, to the transport of male chickens and older hens to a rendering facility.

16.     BCF contracts with independent poultry growers throughout the Northwest Arkansas region to raise its hatched chicks through the age of approximately 15 weeks. Upon information and belief, BCF retains ownership of the chicks during the entire process. When

4

they reach 15 weeks of age, BCF retrieves the chickens and transports the hens to one of several laying factories owned by BCF, and the roosters to a rendering plant. BCF schedules and supervises these transports.

17.     BCF and Labor, Inc., jointly employ a crew of poultry workers who transport the chicks from the hatchery to the farms of independent growers. The crews return to the farms a second time to inject the chickens' wings and breasts with medicine, administer eye drops, and clip their beaks. These tasks are performed under the supervision of both Labor, Inc., and BCF.

18.     Both the medicine administered to the chickens and all the tools used by the crews in performing their jobs are provided to the crews by BCF.

19.     After 15 weeks, the crews return to the farms a third time to transport the chickens to the laying factories or rendering plants. Approximately 1 and ½ years later, the crews retrieve the older hens from the laying factories and transport them to the rendering factories. The transport of the chickens at both stages is scheduled and supervised by both Labor, Inc., and BCF.

20.     Plaintiffs and those similarly situated worked almost exclusively for BCF, on farms which BCF has contracted with to raise its chicks. Plaintiffs and those similarly situated are, on occasion, granted permission from BCF to perform similar work for another egg producer. Plaintiffs' spend approximately 97% of their time working on a farm for the benefit of BCF, and approximately 3% of their time working on a farm for the benefit of another egg producer with the permission of BCF.

21.     The daily job activities of the crew are jointly supervised by an employee of Labor, Inc., Leon Gonzales, and an employee of BCF, "Allen". Allen met the crews on the farms and provided them with the medicine for the injections and the beak clippers. Allen

5

prepared the work sites for the crews. While the crews were working on the farms, Allen and Leon rode around together supervising their activities. On the occasions when Allen was not physically present on the job site, he would stay in contact with Leon and Patricia Wilmouth via telephone.

22.     Leon, on behalf of Labor, Inc., regularly presents reports to BCF through Allen. These reports detail the work performed by the crews as well as the number of chickens that died under their care.

23.     BCF sets deadlines for the crews to perform the processing of all the chickens on each farm. These deadlines often require the crews to work long hours to get the job done.

24.     As crew members, Plaintiffs were paid on a piece-rate basis, at varying amounts per chicken depending on the type of work performed. Pursuant to the FLSA, when employees are paid on a piece-rate basis, their hourly rate can be determined by dividing the total weekly earnings by total weekly hours worked.

25.     Plaintiffs were paid 2.5 cents per chicken that they transported (from the hatchery, to the factory, and to the rendering plant).

26.     On the days Plaintiffs worked transporting chickens, they transported approximately two truckloads of chickens, regardless of the destination (independent grower, laying factory, or rendering plant). Each truck holds approximately 7,000 chickens. On these days, Plaintiffs worked a minimum of 12 hours per day, and got paid approximately $60.00 each, resulting in an hourly wage below the minimum wage required under the FLSA.

27.     Plaintiffs worked in crews of three, and the crew was paid 4 cents per chicken on which they completed a series of four tasks: administering injections to their wings, administering injections to their breasts, administering eye drops, and clipping their beaks.

6

28.     Prior to 2009, Plaintiffs were not responsible for clipping the beaks of the chickens, as that process was completed by a machine. Plaintiffs crew pay per chicken did not increase when they took on the additional task of clipping the chickens' beaks.

29.     On the days Plaintiffs worked administering injections and eye drops, and clipping beaks, the crew processed approximately 5,000 chickens. On these days, Plaintiffs worked a minimum of 12 hours per day, and got paid approximately $66.00 each, resulting in an hourly wage below the minimum wage required under the FLSA.

30.     In June of 2011, Plaintiffs complained to Defendants about their low pay and working conditions. Plaintiffs were terminated as a result of these complaints. Defendants' actions in terminating Plaintiffs constitutes retaliatory conduct under the FLSA.

31.     Defendants have been notified on previous occasions, or should have known, about the violations of the Fair Labor Standards Act. They have taken no action, despite demands and notice. Defendants' actions are willful and are taken with knowledge that its acts violate the wage and hour provisions of the Fair Labor Standards Act.

32.     The unlawful policy followed by Defendants has been in place for a period in excess of three (3) years and is in place at the present time.

## IV.   COLLECTIVE ACTION ALLEGATIONS

33.     Plaintiffs bring the First Claim for Relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by Defendants as poultry workers, paid on a piece-rate basis, whose weekly income does not meet the minimum wage requirements of the Fair Labor Standards Act working in Arkansas and throughout the United States, at any time within the applicable statue of limitations period.

7

34.     The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. § 216(b), as prospective members of the FLSA Collective Action are similarly situated to Plaintiffs and have claims that are similar to Plaintiffs' First Claim for Relief.

35.     Questions of law and fact common to the collective action as a whole include, but are not limited to, the following:

a. Whether Defendants were the joint employers of Plaintiffs;

b. Whether Defendants unlawfully failed and continue to fail to compensate FLSA Collective Action Plaintiffs and prospective FLSA Collective Action Plaintiffs below the minimum wage provisions of the FLSA, 29 U.S.C. §201 *et seq.*;

c. Whether Defendants' failure to pay overtime to the FLSA Collective Action Plaintiffs was willful within the meaning of FLSA;

d. Whether Defendants failed and continue to fail to maintain accurate records of actual time worked by the FLSA Collective Action Plaintiffs; and

e. Whether Defendants failed and continue to fail to provide accurate wage statements itemizing all actual time worked and wages earned by the FLSA Collective Action Plaintiffs.

36.     Plaintiffs and the FLSA Collective Action Plaintiffs are similarly situated and are subject to Defendants' common practice, policy or plan of failing to compensate them at the minimum wage required under the FLSA.

37.     The names and addresses of the FLSA Collective Action Plaintiffs are available from Defendants, and notice should be provided to the FLSA Collective Action Plaintiffs via first class mail to their last known address as soon as possible.

8

## V.   FIRST CLAIM FOR RELIEF

### (Fair Labor Standards Act, 29 U.S.C. § 201 et seq., Brought by Plaintiffs on Behalf of Themselves and all FLSA Collective Action Plaintiffs)

38.     Plaintiffs, on behalf of themselves and all FLSA Collective Action Plaintiffs, reallege and incorporate by reference paragraphs 1 through 36 as if they were set forth again herein.

39.     At all relevant times, Defendants Labor, Inc., and BCF were joint employers of the plaintiffs pursuant to the FLSA.

40.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed and/or continue to employ "employee[s]," including Plaintiffs and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.00.

41.     Plaintiffs in this action have signed Consent to Sue forms pursuant to Section 16(b) of the FLSA, 29 U.S.C. §§ 216(b) and 256. By filing this Complaint, Plaintiffs consent to be collective action representatives, and other individuals will sign consent forms and join as plaintiffs on this claim in the future.

42.     The FLSA requires Defendants, as covered employers, to compensate all nonexempt employees for all hours worked at a rate not less than the minimum wage set forth at 29 U.S.C. §206. The minimum wage applicable to Plaintiffs and those similarly situated prior to

July 24, 2009, was $6.55 per hour. The minimum wage applicable to Plaintiffs and those similarly situated from July 24, 2009, to present was $7.25 per hour.

43. Plaintiffs and all FLSA Collective Action Plaintiffs are entitled to compensation for all hours worked at a rate not less than those set out above.

44.     At all relevant times, Defendants, pursuant to their policies and practices, failed and refused to compensate Plaintiffs and the FLSA Collective Action Plaintiffs for work performed at the minimum wage required by the FLSA.

45.     Defendant violated and continues to violate the FLSA, 29 U.S.C. §201 *et seq.*, including 29 U.S.C. §§ 206(a)(1) by failing to pay FLSA Collective Action Plaintiffs for all hours actually worked at the minimum wage rates prescribed therein. These violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. §201 et seq.

46.     The FLSA also imposes specific employment record-keeping requirements, including the obligation to keep accurate records of all hours worked. By failing to record, report, and/or preserve records of hours worked by Plaintiffs and the prospective FLSA Collective Action Plaintiffs, Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment, in violation of the FLSA, 29 U.S.C. § 201 et seq., including 29 U.S.C. §§211(c) and 215(a). These violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. §201 *et seq.*

47.     As a result of Defendant's violations of law, FLSA Collective Action Plaintiffs are entitled to recover from Defendants the amount of their unpaid wages, an additional equal amount as liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b), prejudgment interest, attorneys' fees, litigation expenses and court costs, pursuant to 29 U.S.C. § 216(b), and

such other legal and equitable relief as the Court deems just and proper.

## VI.   SECOND CLAIM FOR RELIEF

**(Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) Anti-Retaliation provision,**

**Brought by Plaintiffs on Behalf of Themselves and all FLSA Collective Action Plaintiffs)**

48.     Plaintiffs, on behalf of themselves and all FLSA Collective Action Plaintiffs, reallege and incorporate by reference paragraphs 1 through 46 as if they were set forth again herein.

49.     At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed and/or continue to employ "employee[s]," including Plaintiffs and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

50.     At all times relevant, Defendants' conduct was and is governed by the FLSA, including its anti-retaliation provision. That provision provides that it is unlawful for any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this [act], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. §215(a)(3).

51.     Plaintiffs, by complaining to their employers about their right to minimum wage for each hour worked, have engaged in protected activity as defined and governed by the FLSA.

52.     Defendants engaged in retaliatory conduct against the Plaintiffs in terminating them due to their assertions that they were not being fairly compensated. Defendants' conduct is a violation of the anti-retaliation provision of the FLSA, for which statutory penalties should attach.

53.     Plaintiffs seek damages, including back pay and liquidated damages, incurred as a result of Defendants' retaliatory conduct.

## SUMMARY

54.     In count one (1) of Plaintiffs' complaint, they ask the Court to enter a declaratory judgment, declaring that Defendants, as joint employers of Plaintiffs, have willfully and wrongfully violated their statutory obligations, and deprived the Plaintiffs and those similarly situated of their rights, protection and entitlements under law as alleged in Plaintiffs' Complaint.

55.     In count two (2) of Plaintiffs' complaint, they ask the Court to enter a declaratory judgment, declaring that Defendants have engaged in retaliatory and discriminatory conduct against Plaintiffs, that such conduct violates the Plaintiffs' rights as protected under the FLSA, and thus caused damage to the Plaintiffs and other similarly situated employees.

56.     Plaintiffs further request the Court to enter a permanent injunction, restraining and preventing Defendants from withholding the compensation that is due each of the Plaintiffs and those similarly situated and from further violating their rights under the law.

57.     Plaintiffs further ask that the Court order a complete and accurate accounting of all the compensation to which Plaintiffs are entitled as well as provide a complete listing of the names and addresses of all those employees who are similarly situated as described above.

58.     Plaintiffs will ask this Court to award them monetary damages in the form of backpay compensation, liquidated damages equal to their unpaid compensation, plus interest.

This will be for the named Plaintiffs and all Plaintiffs similarly situated.

59.     Plaintiffs further ask the Court to award them their attorney fees, and their costs and expenses and disbursements in pursuing this cause of action for the named Plaintiffs and all those similarly situated.

## DEMAND FOR JURY TRIAL

60.     Plaintiffs demand a trial by jury upon all issues herein.


WHEREFORE, Plaintiffs pray that Defendants be summoned to appear and answer; that the Court enter a declaratory judgment, declaring that Defendants have willfully and wrongfully violated their statutory obligations, and deprived Plaintiffs and all Plaintiffs similarly situated of their rights, protection and entitlements under the law, and particularly the Fair Labor Standards Act as alleged herein; that the Court enter a permanent injunction, restraining and preventing Defendants from withholding the compensation that is due Plaintiffs and all Plaintiffs similarly situated and from further violating their rights under Fair Labor Standards Act and other applicable laws; that the Court order a complete and accurate accounting of all the compensation to which Plaintiffs and all Plaintiffs similarly situated are entitled; that each Plaintiff and all Plaintiffs similarly situated be awarded monetary damages in the form of back-pay compensation, liquidated damages equal to their unpaid compensation, plus interest; that the Plaintiffs and all Plaintiffs similarly situated specifically pray for a jury trial; that the Plaintiffs and all Plaintiffs similarly situated should have their attorneys fees paid by Defendants as well as their expenses, costs and any disbursements required to bring this cause of action; and any other just and proper relief to which they may be entitled.

Respectfully submitted,

HOLLEMAN & ASSOCIATE, P.A.
200 West Capitol Avenue, Suite 1620
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile:  (501) 975-5043

By: _____

John T. Holleman, ABN 91056
jholleman@johnholleman.net
Maryna O. Jackson, ABN 2009111
maryna@johnholleman.net
Amber R. Schubert, ABN 2009150
amber@johnholleman.net

and

Ken Swindle, ABN #97234
SWINDLE LAW FIRM, P.A.
619 W. Persimmon St.
Rogers, AR 72756
Telephone:  (479) 621-0120
Facsimile:  (479) 621-0838

14